**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **No. 26-CR-121-DLF** |
| **MICHAEL MARX** | : | |

**EMERGENCY MOTION FOR IMMEDIATE RELEASE FROM CUSTODY**
**AND FOR EMERGENCY HEARING**

Michael Marx, through the undersigned attorney, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Section 3142(b) states that the Court "shall order the pretrial release of [Mr. Marx] on personal recognizance . . . unless" there are absolutely no conditions of release that would ensure Mr. Marx's appearance at court and the safety of the community. Mr. Marx successfully rebuts the presumption of detention with evidence of (1) his current physical condition which restricts him from fleeing or posing a danger to the community; (2) his limited criminal history; and (3) the availability of conditions of release to adequately protect against any risk. The government cannot meet its burden to show either (1) by a preponderance of the evidence that Mr. Marx is a risk of flight or (2) by clear and convincing evidence that no conditions can ensure the safety of the community. Mr. Marx asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

If the Court believes a hearing on this question is appropriate, Mr. Marx respectfully requests a hearing to be set at the earliest date and time possible, given pressing concerns about whether and when he will be taken to a carceral facility under the current status quo.

1

2

## I.   Background

Michael Marx was arrested by United States Secret Service on May 4, 2026, following an incident during which Mr. Marx is alleged to have discharged a firearm in the direction of USSS officers on Independence Avenue in Northwest Washington, D.C. During this incident, Mr. Marx was shot three times by USSS officers. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

   ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Undersigned counsel has discussed the same with counsel for the United States. Prior to Mr. Marx's May 29, 2026 initial appearance and arraignment, the parties agreed to set a detention hearing to occur one to two weeks after the initial appearance, during which time the parties agreed that Mr. Marx would not be brought to jail, but be allowed to remain in medical treatment. █

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ The parties represented their agreement that Mr. Marx remain out of jail to Judge Moxila A. Upadhyaya at the initial appearance, who agreed with the position of the parties and scheduled a detention hearing for this coming Friday, June 5, 2026.

Immediately following the initial appearance, undersigned counsel, who appeared remotely from █████████ beside Mr. Marx for the initial appearance and arraignment, encountered representatives from the United States Marshal Service, who took over custody of Mr. Marx and relieved the USSS detail that had been present for the first three weeks of Mr. Marx's hospital stay. The USMS officers on scene informed undersigned counsel that Mr. Marx was now in USMS custody; that medical representatives from the Department of Corrections were on the way; and that they expected Mr. Marx to be transported to the D.C. jail within hours.

Later in the evening of May 29, 2026, Judge Moxila A. Upadhyaya informed the parties by e-mail that Mr. Marx would *not* be moved to the jail, as the parties had agreed on the record and had been ordered at the initial appearance, and that the USMS had agreed to the same.

On the morning of May 30, 2026, undersigned counsel received correspondence from a Department of Corrections representative that the United States Marshal Service had again attempted "to get DOC to take him." DOC declined the Marshals' request as the jail does not have the capacity to accommodate the level of care Mr. Marx needs.

Undersigned counsel is extremely concerned about the possibility that Mr. Marx could be moved to a carceral facility at any moment, before the parties have the chance to litigate his

4

detention, and contrary to the intention of the parties and the Court. As such, Mr. Marx submits this emergency motion, requesting immediate release from custody ███████████████████

████████████████████████████████████████████████████████████████████████

███████, as well as an emergency detention hearing, should the Court wish to hold a hearing on the matter, at the Court's earliest convenience. Mr. Marx has no objection to release on the strictest possible conditions, in order to allow him to continue receiving adequate medical care and the physical therapy and rehabilitation he needs to have a chance at recovery. Undersigned counsel respectfully submits that given Mr. Marx's history and characteristics, and most importantly his current physical state, there is no risk of flight, and no danger to the community that cannot be sufficiently guarded against through conditions of release. The government opposes the request for release.

## II.      Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of

5

reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

Under 18 U.S.C. § 3142(e)(3)(B) a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community where a defendant is charged under 18 U.S.C. § 924(c). Where the presumption applies, the Bail Reform Act imposes a "burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alitishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Such a burden is "not heavy" and only requires the production of "some evidence." *United States v. Bustamante-Conchas*, 557 Fed. Appx. 803, 806 (10th Cir. 2014).

Even in cases where a rebuttable presumption applies, it is ultimately the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Marx be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

### III.    Mr. Marx Can Rebut the Presumption of Detention with Credible Evidence.

Mr. Marx can rebut the presumption of detention with "some credible evidence" that there are conditions, which would reasonably assure his appearance and the safety of the community.

6

First, Mr. Marx is a 45-year-old man with almost no criminal history. He has no violent criminal history whatsoever. He has no firearm-related criminal history whatsoever. His most recent conviction is a traffic offense from 2011. His only felony conviction is a 2009 drug trafficking charge from a period of deep instability and addiction, from which he has worked hard to recover. This lack of criminal history indicates that Mr. Marx is a generally law-abiding individual and that conditions may be sufficient to mitigate any risk of flight or community danger. ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ Clearly, conditions of release—such as location monitoring, requiring that he remain at an acute care inpatient facility, reevaluation of his conditions of release upon discharge from such a facility, and phone/internet restrictions can more than sufficiently mitigate any risk. The foregoing facts rebut the presumption of detention in this case.

**IV.    The Government Cannot Meet Its Burden to Demonstrate that Mr. Marx is a Flight Risk or Danger to the Community.**

The D.C. Circuit has reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at

751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community). The government has not and cannot meet its burden here and Mr. Marx should be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Marx appearance at trial and protect the public.

1. *The Nature and Circumstances of the Offense*

Undersigned counsel concedes that the nature and circumstances of the alleged offense in this case are very serious and likely weigh in favor of detention.

2. *The Weight of the Evidence*

The weight of the evidence cannot be given undue consideration and it is the least important factor for the Court to consider because Mr. Marx is innocent until proven guilty and too much consideration of the weight of the evidence flies in the face of that important constitutional protection. Government counsel has provided no discovery[1], so Mr. Marx has been given zero opportunity to refute, or even review the alleged evidence upon which the government will rely. The government's allegations do not provide clear and convincing evidence that Mr. Marx would be a danger to the community or risk of flight if released. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). Mr. Marx takes no strong position as to the weight of the evidence at this

---

[1] Undersigned counsel and the government have been working closely and cooperatively in this case. The government has agreed to early disclosure, and the parties are working to facilitate a discovery exchange. Undersigned counsel puts no fault on the government for the defense's lack of access to discovery at this time. The United States also agreed to allow Mr. Marx to stay out of jail and in medical treatment pending his detention hearing to allow additional time for discovery and medical record review, and for appropriate placement to be identified. The circumstances giving rise to the need for this emergency motion are outside of the parties' control.

time.

### 3. *The History and Characteristics of Mr. Marx*

Mr. Marx's  history and characteristics not only rebut the presumption as discussed above, but also demonstrate that there are conditions of release that can reasonably assure his appearance and protect the community.  As discussed above, Mr. Marx has a very limited and dated criminal history. Moreover, Mr. Marx's current physical and medical state already prevent him from posing a danger to the community or risk of flight.  Mr. Marx's history and characteristics do not provide clear and convincing evidence to support his pretrial detention, but instead strongly support release and indicate that a combination of conditions can protect the public and ensure Mr. Marx's appearance at court.

### 4. *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Marx's Release*

The government cannot provide clear and convincing evidence to support a finding that Mr. Marx would be a danger to the community if released.  First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring).  "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government cannot provide specific evidence to support a finding that Mr. Marx currently poses an unmitigable threat to public safety. He is not in any position to pose a flight risk or danger to the community, whether he wanted to or not. Moreover, given his current physical and

medical state, conditions like location monitoring; residence restriction; and any other conditions the Court finds appropriate would clearly mitigate any risk.

The government cannot provide any evidence specific to Mr. Marx to support such a finding and, therefore, he should be released pending trial.

**V.    Mr. Marx Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety.**

Mr. Marx must be released because there are conditions that will reasonably assure the safety of the community and Mr. Marx's appearance in court.  A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court.  *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)).  Here, the government cannot carry its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community.  *See id*. at 708 n.8.  The government also cannot prove by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Marx's appearance in court.  Thus, Mr. Marx cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Marx's appearance in court and the safety of the community.

- High Intensity Supervision Program;

- Location monitoring with home incarceration requiring Mr. Marx to enter and remain in a medically appropriate inpatient acute care rehabilitation facility;

- Report on a "regular basis" to PTS or some other agency, *id*. § 3142(c)(1)(B)(vi);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

10

Because there are conditions of release that will reasonably assure Mr. Marx's appearance in court and the safety of the community, he should be released.

## VI.    Conclusion

For the foregoing reasons, Mr. Marx respectfully requests that this Court find that the presumption has been rebutted and release him with conditions.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
KATE ADAMS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

11